**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COUNTY CONCRETE CORPORATION,<br><br>*Petitioner*,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 863,<br><br>*Respondent*. | Civil Action No. 26-660<br><br>**OPINION**<br><br>September 21, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon Petitioner County Concrete Corporation's ("Petitioner" or "Employer") Petition and Motion to Vacate an Arbitration Award, (ECF 1, "Petition" or "Pet."; ECF 2, "Motion" or "Mot."), and Respondent International Brotherhood of Teamsters Local 863's ("Respondent" or "Union") Cross-Petition and Cross-Motion to Confirm the Arbitration Award. (ECF 9 "Cross-Petition" or "Cross-Pet."; ECF 8, "Cross-Motion" or "Cross-Mot."). The Court has decided this matter upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Petitioner's Petition and Motion are **DENIED** and Respondent's Cross-Petition and Cross-Motion are **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

[1] The facts are derived from the Petition, Cross-Petition, and any "document integral to or explicitly relied upon in the [pleadings]." *Cf. In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted).

This case arises out of an arbitration between Petitioner-Employer and Respondent-Union regarding just cause to terminate Greggory Wells ("Grievant" or "Wells"). (*See* ECF 1-3, Ex. A, "Arbitrator's Opinion and Award" or "Arb. Op." at 1.) Employer operates a ready-mix concrete, sand, gravel, and landscape supply facility in Landi, New Jersey (the "Landi Facility"). (Pet. ¶ 4.) Employees of the Landi Facility are represented for purposes of collective bargaining by the Union. (*See id.* ¶¶ 5, 20.) Employer and Union are parties to a collective bargaining agreement effective March 26, 2023 through January 15, 2028 (the "CBA"). (ECF 1-4, Ex. B, "CBA.") The CBA incorporates Employer's Employee Manual, including Standard Operating Procedure 17 ("SOP 17"), which prohibits "use, possession of or impairment from alcohol, narcotics, or cannabis on [Employer] property." (CBA at 17; ECF 1-5, Ex. C, "Emp. Manual" at 72.)

Wells began working at the Landi Facility in 2021. (Pet. ¶ 7.) On April 24, 2025, while on lunch break, Wells drove his personal vehicle past Operations Manager Peter Crimi ("Crimi") and Sales Representative Jim Murtagh ("Murtagh") on the Landi Facility's private driveway. (*See id.* ¶ 8.) Both Crimi and Murtagh "immediately detected a strong distinct odor of marijuana emanating from Grievant's vehicle" and were certain of the odor despite standing about 20 feet away from the moving vehicle. (*Id.* ¶¶ 8-9.) Later that afternoon, Wells returned to work and Crimi initiated a reasonable suspicion drug test, which Wells completed and allegedly told Crimi "it would 'come back positive.'" (*See id.* ¶¶ 13-16.) On April 25, 2025, Employer suspended Wells pending the results of his drug test and later terminated him after receiving confirmation of the marijuana-positive test on May 5, 2025. (*Id.* ¶¶ 16-18; *see also* ECF 1-6, Ex. D; ECF 1-7, Ex. E, "Termination Notice.") Wells previously tested positive on a drug test during his employment in December 2023 and was informed that a second positive drug test would result in his termination under Employer's two-strike policy. (*See* Pet. ¶¶ 17-19; Termination Notice.)

In response, the Union filed a grievance challenging Wells's termination (the "Grievance"), and the dispute proceeded to arbitration before Arbitrator Mattye M. Gandel ("Arbitrator"). (Pet. ¶ 20.) The Arbitrator conducted an evidentiary hearing on October 13, 2025, and the parties submitted post-hearing briefs. (Arb. Op. at 1.) On December 15, 2025, the Arbitrator concluded that Employer failed to establish the Grievant's workplace use of, possession of, or impairment from cannabis, and therefore did not have just cause to terminate Grievant. (*Id.* at 18.) The Arbitrator accordingly awarded the Grievant "reinstated to his former position with full back pay, seniority and benefits" (the "Award"). (*Id.*)

On January 21, 2026, Employer filed the Petition and Motion in this Court to vacate the Arbitrator's Opinion and Award. (*See* Pet.; Mot.) Employer claims that the Award must be vacated because the Arbitrator "manifestly disregarded controlling New Jersey law" and "exceeded her [CBA-derived] contractual authority." (*See* ECF 1-2, "Pet. Br." at 10-15.) On March 2, 2026, the Union answered and filed the Cross-Petition and Cross-Motion, asking this Court to deny Petitioner's Motion and confirm and enter judgment enforcing the Award. (*See* Cross-Pet.; Cross-Mot.) The Union argues that this Court does not have a basis to vacate the Award as the Arbitrator's reasoning "represents a rational interpretation of the [CBA]." (*See* ECF 8-1, "Res. Br." at 6-11.) On March 13 and 30, 2026, Employer answered Respondent's Cross-Petition and replied, respectively. (*See* ECF 14; ECF 16, "Pet. Reply.")

## II. LEGAL STANDARD

### A. Comparing the FAA and LMRA

As an initial matter, Petitioner argues that it did not invoke the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, but rather brought this action pursuant to Section 301 of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185, and therefore the LMRA governs the standard of review. (*See* Pet. ¶ 1; ECF 14; Reply at 3.)

There are "two procedural vehicles for seeking to vacate or confirm a labor arbitration award." *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 312 (3d Cir. 2021). A litigant has "the option to file a motion invoking the FAA or to initiate a civil action under § 301 of the [LMRA]." *Sheet Metal Workers Int'l Ass'n Loc. Union No. 25 v. Jansons Assocs., Inc.*, No. 24-2819, 2025 WL 2142669, at *1 (3d Cir. July 29, 2025); *see also* 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions …."). While LMRA actions "are formal civil proceedings to which the Federal Rules of Civil Procedure are fully applicable, … FAA Section 9 motions to confirm [and Section 10 motions to vacate] an arbitration award are addressed through summary proceedings, which are shorn of certain formalities such as pleadings." *PG Publ'g, Inc.*, 19 F.4th at 313 (citation omitted); *see also Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 254 (3d Cir. 2020) ("[T]he FAA provides for confirmation [and vacatur] proceedings to be summary proceedings … by requiring that the parties 'apply' for confirmation rather than file a complaint. An 'application' is merely a 'motion,' or a request for the court to make a particular ruling or enter a particular order, and not a formal lawsuit or 'action.'" (citations omitted)). Thus, "LMRA Section 301 actions and FAA motions produce distinct types of proceedings [and] prescribe different legal standards …."[2] *PG Publ'g, Inc.*, 19 F.4th at 312.

[2] In addition to different proceedings and legal standards, LMRA Section 301 actions and FAA motions also draw different statutes of limitations. *PG Publ'g, Inc.*, 19 F.4th at 314 (noting that FAA motions to vacate are governed by a 90-day limitations period and LMRA actions are governed by the relevant state statute of limitations); *see also* New Jersey Arbitration Act, N.J. Stat. Ann. 2A:24-7 ("A party to the arbitration may, within 3 months after the award is delivered to him … commence a summary action in the court aforesaid for the confirmation of the award or for its vacation, modification or correction."). In this case, the parties do not raise a statute of

"To determine whether a party invoked the FAA, as opposed to § 301, 'we look to both the substance of the filing and [the] manner of litigating th[e] dispute.'" *Jansons Assocs., Inc.*, 2025 WL 2142669, at *1 (alterations in original) (quoting *PG Publ'g, Inc.*, 19 F.4th at 319). In other words, courts consider how the matter was filed and how the parties proceeded. Moreover, the Third Circuit has found that a filing that requests confirmation or vacatur of an arbitration award is a motion, not a pleading, where the party subsequently litigates in accordance with motions practice as required under the local rules. *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.*, 438 F.3d 298, 308 (3d Cir. 2006). The fact that a petitioner labels its filing as a "petition" does not automatically convert the filing into a pleading. *Id.* ("The title of 'petition' certainly does not vitiate the substance of the application.").

Here, it is questionable whether Petitioner invoked the FAA based on the substance of its Petition and Motion and the manner in which Petitioner litigated. Although Petitioner labeled its initial filing as "Petition to Vacate Arbitration Award" and did not reference the FAA in the Petition itself, (*see* Pet.), the Petition contains no "Counts"—only a request for an order vacating the Award; and Petitioner references the FAA and appears to use "Petition" and "Motion" interchangeably in the accompanying brief labeled "Brief in Support of Petitioner's Motion to Vacate the Award of Arbitrator Mattye M. Gandel." (*See* Pet.; Pet. Br.) Petitioner also filed a notice of motion, proposed order, and proof of service on the same day, (Mot.; ECF 4), in accordance with motions practice under Local Civil Rule 7.1. *Compare PG Publ'g, Inc.*, 19 F.4th at 319 (finding the LMRA controlled where the plaintiff's filing "was labeled and styled as a

limitations argument as the pending Motion and Cross-Motion were both filed within 90 days of the Arbitrator's December 15, 2025 Opinion and Award. (*See* Mot. (January 21, 2026); Cross-Mot. (March 2, 2026).)

complaint" because "[i]t raised five 'Counts[]' [a]nd it did not contain any variation of the word 'motion'"), *with IFC Interconsult, AG*, 438 F.3d at 308 (finding the FAA controlled where the petitioner's filing contained the phrase "moves the court for an order" and was "accompanied by a brief, a proposed order, and an appropriate affidavit," as required for motions practice under the governing local rules). However, pursuant to Federal Rule of Civil Procedure 12(a)(1), both Respondent and Petitioner filed (albeit, untimely) answers to the Petition and Cross-Petition, respectively, which is indicative of a typical civil proceeding rather than a summary proceeding. (ECF 9; ECF 14); *see PG Publ'g, Inc.*, 19 F.4th at 313-14.

Ultimately, determining whether Petitioner invoked the FAA is of no moment. The Court finds that whether the parties moved pursuant to the FAA or filed suit under the LMRA, the outcome of this matter remains the same. While there is "a formal difference between the standards applicable to an LMRA Section 301 complaint and an FAA Section 10 motion,"[3] "in practice, that formal distinction may often be of little significance." *Id.* at 314 (noting that "'the federal courts have often looked to the [FAA] for guidance in labor arbitration cases' involving LMRA Section 301" and courts have also looked "to LMRA Section 301 cases for guidance on the FAA" (citations omitted)). For example, as is the case in this matter, the delta between the standards is inconsequential where "there are no material issues of fact presented" and the parties are seeking "judgment as a matter of law." *See id.* (quoting *Prospect CCMC, LLC v. CCNA/Pa. Ass'n of Staff Nurses and Allied Pros.*, No. 18-4039, 2019 WL 342713, at *8 (E.D. Pa. Jan. 28, 2019)); (ECF 13 (joint letter representing that "discovery is not needed in this matter")).

[3] The Third Circuit notes: "Whereas at the pleading stage of an LMRA Section 301 action, a plaintiff's factual allegations in its complaint to vacate an arbitration award are entitled to a liberal reading, a party moving to vacate an arbitration award pursuant to FAA Section 10 immediately bears the burden of proof." *PG Publ'g, Inc.*, 19 F.4th at 314 (citations omitted).

**B. Deference to the Arbitrator**

"It is rare for [courts] to disturb an arbitration award." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013). Indeed, "[t]here is a strong presumption under the [FAA] in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005). "[M]indful of the strong federal policy in favor of commercial arbitration, [the Third Circuit] begin[s] with the presumption that the award is enforceable." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012) (citation omitted), *aff'd*, 569 U.S. 564 (2013); *see also Bellantuono v. ICAP Sec. USA, LLC*, 557 F. App'x 168, 173 (3d Cir. 2014) ("Our review of the arbitration award itself [] 'could be generously described only as extremely deferential.'" (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 372 (3d Cir. 2003))). As such, "[a] more deferential standard of review applies to the arbitration award itself[,]" and courts "do not entertain claims that an arbitrator has made factual or legal errors." *Davison Design & Dev., Inc. v. Scorza*, No. 24-1442, 2025 WL 789546, at *1 (3d Cir. Mar. 12, 2025) (alterations in original) (quoting *Sutter*, 675 F.3d at 219). "This is because when an arbitrator makes a 'good faith attempt' to interpret and enforce a contract, 'even serious errors of law or fact will not subject [its] award to vacatur.'" *Id.* (alteration in original) (quoting *Sutter*, 675 F.3d at 220).

Under § 301 of the LMRA, "federal courts may entertain 'a suit to set aside an arbitration award entered pursuant to a collective bargaining agreement ... if [the suit] alleges that the award failed to draw its essence from the collective bargaining agreement or that the arbitrator exceeded his powers thereunder.'" *Teamsters Loc. Union No. 355 v. Ensinger Penn Fibre, Inc.*, No. 24-1037, 2025 WL 1098840, at *2 (3d Cir. Apr. 14, 2025) (alterations in original) (quoting *Davis v. Ohio Barge Line, Inc.*, 697 F.2d 549, 555 (3d Cir. 1983)). "Judicial review of a labor-arbitration

pursuant to a collective bargaining agreement is very limited." *United Steel Workers, AFL-CIO, CLC v. Int'l-Matex Tank Terminals*, No. 22-2491, 2022 WL 17343786, at *2 (D.N.J. Nov. 30, 2022) (quoting *Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 272 F.3d 182, 185 (3d Cir. 2001)); *see also Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996) ("The Supreme Court has frequently cautioned courts of the extremely limited role they play in reviewing the decision of an arbitrator. It has said that '[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.'" (alteration in original) (citations omitted)).

Given this very limited and extremely deferential standard of review, courts look to the FAA's four narrow circumstances where vacatur of an arbitration award is warranted:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "The party seeking to overturn an award bears a heavy burden, as these are 'exceedingly narrow circumstances,' and courts accord arbitration decisions exceptional deference." *Handley v. Chase Bank USA NA*, 387 F. App'x 166, 168 (3d Cir. 2010) (internal citation omitted) (quoting *Dluhos*, 321 F.3d at 370). Thus, a court must "enforce an arbitration award if it was based on an 'arguable' interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it

reflects a 'manifest disregard of the agreement, totally unsupported by principles of contract construction….'" *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993) (citation omitted).

Even if the court is "convinced [the arbitrator] committed serious error," it "may not vacate an award except in rare instances." *Teamsters Loc. Union No. 355*, 2025 WL 1098840, at *2 (citation omitted). Therefore, courts "will not disturb an arbitration award 'even if [they] find the basis for it to be ambiguous or disagree[] with [the arbitrator's] conclusions under the law." *Brentwood Med. Assocs.*, 396 F.3d at 241 (first alteration added) (quoting *Citgo Asphalt Ref. Co. v. Paper, Allied–Indus., Chem. & Energy Workers Int'l Union Loc. No. 2–991*, 385 F.3d 809, 816 (3d Cir. 2004)). "[I]f an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citation omitted); *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000))). "[C]onvincing a court of an arbitrator's error—even his grave error—is not enough." *Oxford Health Plans LLC*, 569 U.S. at 572.

Rather, "the sole question for [courts] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.* at 569. "If 'a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further.'" *Teamsters Loc. Union No. 355*, 2025 WL 1098840, at *2 (quoting *Brentwood Med. Assocs.*, 396 F.3d at 241). Accordingly, "[t]he party

seeking to overturn an award bears a heavy burden" given the "exceptional deference" conferred to arbitration decisions. *Handley*, 387 F. App'x at 168; *see also France v. Bernstein*, 43 F.4th 367, 377 (3d Cir. 2022) ("It's a steep climb to vacate an arbitration award.").

## III. ANALYSIS

### A. Vacatur Is Unwarranted

Petitioner seeks vacatur of the Arbitrator's December 15, 2025 Opinion and Award on two grounds. (*See* Pet. Br.) First, Petitioner claims that the Arbitrator "manifestly disregarded controlling New Jersey law." (*Id.* at 10-14.) Second, Petitioner argues that the Arbitrator "exceeded her [CBA-derived] contractual authority." (*Id.* at 14-15.) The Court addresses each argument in turn.

#### 1. Manifest Disregard of Law

"The Circuits are split on whether an arbitrator's 'manifest disregard of law' is still a valid basis to vacate an arbitration award, and the Third Circuit has not yet weighed in." *Laundry, Distribution & Food Serv. Joint Bd., Workers United v. Wacoal Am., Inc.*, No. 25-11806, 2026 WL 622383, at *6 (D.N.J. Mar. 5, 2026) (citations omitted); *see also Sabre GLBL, Inc. v. Shan*, 779 F. App'x 843, 849 (3d Cir. 2019) ("It is an open question in this Circuit whether an arbitrator's manifest disregard of the law remains a valid basis for vacatur in light of the Supreme Court's holding in *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, that § 10 of the FAA provides the statute's 'exclusive grounds for expedited vacatur' of an arbitration award." (quoting 552 U.S. 576, 584 (2008))). Nevertheless, assuming that the manifest disregard standard remains, Petitioner has not shown that vacatur of the Award is warranted under that standard.

To obtain vacatur under this manifest disregard of law standard, "a party challenging an award must show more than arbitrator error in interpreting or applying the governing law." *Facta Health Inc. v. Pharmadent LLC*, No. 23-2224, 2024 WL 4345299, at *6 n.5 (3d Cir. Sept. 30,

2024). "Rather, a party must show that the arbitrator's decision 'fl[ies] in the face of clearly established legal precedent,' such as where an arbitrator 'appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.'" *Id.* (quoting *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 121 (3d Cir. 2016)). The Third Circuit "therefore describe[s] this standard as 'extremely deferential.'" *Whitehead*, 811 F.3d at 121.

Here, Petitioner argues that "the Arbitrator expressly recognized the controlling statutory framework governing marijuana testing in the workplace." (Pet. Br. at 10.) The Arbitrator recognized that, as of 2021, under New Jersey law, marijuana is legal for recreational use and "the State developed standards to determine when an employer can terminate an employee for using marijuana." (Arb. Op. at 13 (citing New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA"), N.J. Stat. Ann. § 24:6I-52).) As set forth in CREAMMA:

> [A]n employee shall not be subject to any adverse action by an employer solely due to the presence of cannabinoid metabolites in the employee's bodily fluid …. However, an employer may require an employee to undergo a drug test upon reasonable suspicion of an employee's usage of a cannabis item while engaged in the performance of the employee's work responsibilities, or upon finding any observable signs of intoxication related to usage of a cannabis item, or following a work-related accident subject to investigation by the employer…. The employer may use the results of the drug test when determining the appropriate employment action concerning the employee, including, but not limited to dismissal ….

§ 24:6I-52(a)(1). Therefore, New Jersey employers may terminate an employee after a finding of reasonable suspicion of workplace cannabis use, possession, or impairment and confirming such suspicion with a positive drug test. (*See id.*)

Petitioner further contends that the Arbitrator "proceeded to decide the case as though [CREAMMA] did not exist." (Pet. Br. at 11.) Petitioner argues that the Arbitrator's reference to the New Jersey Cannabis Regulatory Commission (the "Commission")'s non-binding best

practices guidance was a departure from controlling law. (*See id.* at 11-13; Pet. Reply at 4-5.) In the Opinion and Award, the Arbitrator discussed the following best practices for employers: relying on evidence that is based on physical or observable signs of on-duty impairment, which may include marijuana odor; documenting such evidence on "a template, 'Reasonable Suspicion' Observation Report Form" within 24 hours or before the release of the drug test results; and designating a point person who is sufficiently trained to determine impairment. (*See* Arb. Op. at 15-18.) Applied to this case, Petitioner relied only on odor of marijuana; documented the observation over a week later—on the same day Petitioner received the Grievant's positive drug test results; and both individuals who observed the smell were not trained in drug impairment recognition. (*See id.*)

Petitioner also claims that the Arbitrator failed to grapple with this District's case law on CREAMMA as set forth in *Henson v. Daimler Truck N. Am. LLC*, No. 22-6479, 2023 WL 3072532 (D.N.J. Apr. 25, 2023). (*See* Pet. Br. at 13-14.) In *Henson*, the court interpreted CREAMMA to permit "[a]dverse action … against an employee based on, but not *solely due to*, the presence of cannabinoid metabolites in the employee's bodily fluids." *Id.* at *5 (emphasis in original). For example, an employer who receives a positive drug test and terminates the employee "based on [reasonable] suspicion that he was under the influence of cannabis in the workplace" is permissible adverse action under CREAMMA. *Id.*

After conducting a hearing and reviewing the parties' post-hearing briefs on the issue, (*see* ECF 1-8; ECF 1-9), the Arbitrator concluded that Petitioner failed to establish reasonable suspicion of the Grievant's workplace cannabis use, possession, or impairment as required for adverse action under CREAMMA. (*See* Arb. Op. at 15-18.) Specifically, the Arbitrator found no evidence of observable signs that the Grievant was under the influence of cannabis on Employer property:

"There was no testimony that the Grievant slurred his speech, no evidence that his eyes were glassy, and no evidence that he was impaired while on duty and no report or evidence of poor work performance." (*Id.* at 16.) Rather, "[t]he record established that two people testified that there was an overwhelming scent of marijuana coming from the Grievant's car as he exited [Employer]'s property." (*Id.* at 15-16.) Indeed, although the Grievant's clothes smelled of marijuana when he returned to work after lunch, Petitioner "allowed the Grievant to complete his shift until 4:30 p.m. that day without any reports of being impaired." (*Id.* at 16-17.)

Respondent defends the Arbitrator's finding of no reasonable suspicion: "An odor, standing alone, establishes only that cannabis may have been present at some point. If the Grievant had previously smoked in his vehicle while off duty, the vehicle could retain that odor. If his clothing had been exposed to cannabis smoke outside of work, it could likewise carry that scent." (Res. Br. at 10; *see also id.* at 7 (noting "Petitioner's own acknowledgement that cannabis can remain detectable in an individual's system for up to thirty days").) Under *Henson*'s interpretation of CREAMMA, "[n]either scenario establishes that [the Grievant] was using cannabis while performing his job duties or that he was impaired on [Employer] property." (*Id.* at 10); *see also Henson*, 2023 WL 3072532, at *5.

The Court finds that Petitioner does not show a manifest disregard of CREAMMA, but its argument is merely a gripe with how the Arbitrator interpreted and applied the statute. That the Arbitrator found marijuana odor to be insufficient to trigger a permissible drug test does not "fly in the face of clearly established legal precedent" under the manifest disregard of law's "extremely deferential" standard. *See Whitehead*, 811 F.3d at 121; *see also Wacoal Am., Inc.*, 2026 WL 622383, at *7 ("The crux of [Petitioner]'s objection, then, is that the Arbitrator simply arrived at a different conclusion than [Petitioner] feels is warranted by the evidence. Even if [Petitioner]'s

perspective had merit, this purportedly erroneous factfinding does not constitute manifest disregard of law."). Indeed, even if the Arbitrator "erred in [her] application of [CREAMMA], that error was not sufficient to vacate the results of the parties' arbitration." *See id.* at 119.

Moreover, the Arbitrator's application of the Commission's best practices does not equate to "ignor[ing] or pay[ing] no attention to" CREAMMA. *See Facta Health Inc.*, 2024 WL 4345299, at *6 n.5. In fact, the Arbitrator used the non-binding best practices to elucidate CREAMMA's reasonable suspicion requirement and Petitioner's failure to establish the Grievant's workplace cannabis use, possession, or impairment before sending him for a drug test. (*See* Arb. Op. at 15-18.) The Arbitrator's Opinion and Award also aligns with "clearly established legal precedent" in this District. *See Whitehead*, 811 F.3d at 121. *Henson* interprets the "plain language" of CREAMMA as disallowing an employer to terminate an employee based on a positive test result for cannabis, "if the presence of cannabinoid metabolites is the only reason for the adverse action." 2023 WL 3072532 at *4-5. Here, the Arbitrator opined that "the undisputed facts" show no evidence that the Grievant used, possessed, or was impaired from cannabis on Employer's property. (*See* Arb. Op. at 15-18.) In the absence of such evidence, "Employer did not have just cause to terminate the Grievant" following his positive drug test. (*See id.* at 18.) Thus, the Arbitrator found that the Grievant "was terminated *solely due to* the presence of cannabinoid metabolites in his bodily fluids, [which] is not permitted under CREAMMA." *Henson*, 2023 WL 3072532 at *4-5.

Accordingly, the Arbitrator did not manifestly disregard controlling New Jersey law, and vacatur of the Award is not warranted. *See Whitehead*, 811 F.3d at 121 ("In these circumstances, where the arbitrators were fully cognizant of the Dead Man's Statute, permitted the parties to brief the issue, and then applied the Statute in a way designed to promote efficiency and fairness in the

arbitral proceedings, we see no legal error at all—much less one that would rise to the level of manifest disregard of the law.").

**2. Exceeding Contractual Authority**

An award is subject to vacatur when an arbitrator exceeds his contractual authority. *Sutter*, 675 F.3d at 219. This occurs when the arbitrator "decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether." *Id.* at 219-20. A district court will not vacate an award if the arbitrator "makes a good faith attempt" at interpreting and enforcing the collective bargaining agreement, even if there are "serious errors or law or fact" in the decision. *Id.* at 220. "But when the arbitrator 'strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice,' he exceeds his powers and his award will be unenforceable." *Id.* (internal quotation marks and citations omitted).

Petitioner argues that the Arbitrator exceeded her contractual authority derived from the CBA, which expressly prohibits the Arbitrator from "adding to or modifying the agreement." (Pet. Br. at 14-15; *see also* CBA at 14.) First, Petitioner points to the parties' stipulation that "the sole governing standard" in this arbitration was whether Petitioner complied with CREAMMA when administering the Grievant's drug test and subsequently terminating him pursuant to SOP 17, which is incorporated into the CBA. (Pet. Br. at 14; *see also* Emp. Manual at 72 (describing SOP 17 as prohibiting the "use, possession of or impairment from alcohol, narcotics, or cannabis on [Employer] property").) Next, Petitioner contends that the Arbitrator "imposed procedural requirements governing reasonable suspicion drug testing that appear nowhere in the CBA and

nowhere in binding New Jersey law"—thereby exceeded her contractual authority. [4] (Pet. Reply at 4; *see also* CBA at 17; Emp. Manual at 72.)

The Court finds that the Arbitrator acted pursuant to her authority to interpret and apply SOP 17 as a binding contractual provision in the CBA. Therefore, the Award "draws its essence" and Respondent's relief is "rationally derived" from the CBA. *See Brentwood Med. Assocs.*, 396 F.3d at 241; *Sutter*, 675 F.3d at 219-20. Moreover, the Arbitrator did not "decide[] an issue not submitted to [her], … or issue[] an award that is so completely irrational that it lacks support altogether." *Id.* As discussed above, the Arbitrator found that Petitioner failed to establish that the Grievant violated SOP 17 because marijuana odor and a positive drug test were insufficient to show "use, possession of or impairment from … cannabis ***on*** [***Employer***] ***property***." (Emp. Manual at 72 (emphases added); *see also* Arb. Op. at 12-13.) Indeed, the Court agrees that the combination of a smell and positive test "says little about when consumption occurred—whether on duty, off duty, or even weeks earlier." (Res. Br. at 7; *see also id.* (noting "Petitioner's own acknowledgment that cannabis can remain detectable in an individual's system for up to thirty days").)

Accordingly, the Arbitrator did not exceed her contractual authority, and vacatur of the Award is not warranted. *See Bimbo Bakeries USA, Inc. v. Bakery, Confectionery, Tobacco Workers & Grain Millers, Loc. 53*, No. 24-9153, 2025 WL 2731068, at *10 (D.N.J. Sept. 25, 2025) ("Petitioner's disagreement with the Arbitrator's interpretation of the CBA and related factual

[4] The alleged extra-contractual requirements relate to the Commission's non-binding best practices that the Arbitrator considered when finding no reasonable suspicion: physical-based evidence, documentation, and training. (*See* Pet. Br. at 14-15; Arb. Op. at 15-18.) As discussed above, in construing the governing statute, the Arbitrator's use of the best practices was authorized statutory interpretation—not an impermissible expansion of her contractual authority. *See Facta Health Inc.*, 2024 WL 4345299, at *6 & n.5.

findings is not sufficient for this Court to vacate the Arbitrator's Opinion and Award."). The CBA demonstrates that the parties bargained for an arbitrator's determination as to the merits of the Grievance, and this Court will not substitute its own views. *See Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004); *Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of Am.*, 896 F.2d 745, 747-48 (3d Cir. 1990). And because the Award "was based on an arguable interpretation and/or application of the [CBA]," this Court "must enforce" it. *Exxon Shipping Co.*, 993 F.2d at 360.

## IV. CONCLUSION

For the reasons stated above, Petitioner's Petition and Motion to Vacate are **DENIED**; Respondent's Cross-Petition and Cross-Motion to Confirm the Arbitration Award are **GRANTED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Stacey D. Adams, U.S.M.J.
Parties